EFFRON, Chief Judge
(concurring in the result):
The military judge in the present ease permitted the prosecution to rely on an uncharged offense to prove that Appellant committed charged, but unrelated, child abuse offenses. Although uncharged misconduct may be used to prove consciousness of guilt in certain circumstances, including cases involving a prosecutor as the victim, the Government in the present case did not establish the requisite factual or legal predicate. For the reasons set forth below, I respectfully disagree with the majority’s decision to uphold the military judge’s ruling that the uncharged misconduct was admissible in this case. I would affirm the decision below on the narrower ground that the military judge’s error was not prejudicial under the circumstances of this case.

The automobile incident

The charges against Appellant alleged various instances of assaulting his stepson, a minor child. The Government sought to introduce evidence of an unrelated incident involving an automobile driven by Appellant. During a hearing on the admissibility of this evidence, the Government presented testimony from an officer regarding an incident that occurred while the officer was serving as trial counsel in Appellant’s case during an earlier stage of the proceedings.
The officer testified that as she was walking across a parking lot, she “noticed that there was a car coming from the south end of the parking lot at quite a high rate of speed,” which she estimated to be twenty miles per hour. At first, she did not recognize the driver, but then she saw through the front windshield that Appellant was driving the car.
According to the officer, Appellant looked at her and continued to drive towards her. As the ear got closer, she “stopped because I saw that the car was heading towards me, and didn’t appear to be slowing down to let me cross the street.” She then “slowed down and started to back up.” She testified that the ear approached to within three to five yards of her and swerved at the last minute to miss her.
The officer subsequently reported the incident. Appellant received a letter of reprimand, and the Government removed the officer from further participation in the ease as trial counsel in view of her status as a potential witness.
At the conclusion of her testimony, the military judge asked the witness: “What did you take all of this to mean?” The witness made four points in response. First, “I took it to mean that he had an opportunity, he saw me in the parking lot, he — I’m certain has some anger towards me.” Second, “I know he has anger towards the legal office in general with regards to this court-martial.” Third, “And I think he started driving his car at me to intimidate me or to make some sort of showing of power or intimidation.” Fourth, “I do not believe he was attempting to hit me with his ear.”
The Government did not present any further evidence. The military judge ruled that the evidence was admissible to show consciousness of guilt. In his findings of fact, the military judge stated that the officer “took the accused’s actions as an attempt to intimidate her, as Trial Counsel, and I find that a reasonable fact-finder could also find the actions to be evidence of an intent to intimidate Trial Counsel, and thus is evidence of consciousness of guilt.”
At trial, the officer’s testimony was consistent with her testimony at the motion hearing. The Government did not put forth any further evidence regarding the incident, including evidence as to how, if at all, the incident could have affected the trial of the underlying assault charges.

The relationship between anger and consciousness of guilt

The Government has a variety of means to punish and deter misconduct towards a prosecuting officer, including prosecution under the Uniform Code of Military Justice (UCMJ), as well as nonjudieial and administrative measures. When such misconduct is not the subject of charges in a pending case, *234 the act of uncharged misconduct may be admissible in a criminal prosecution under Military Rule of Evidence (M.R.E.) 404(b) when the act demonstrates a fact of consequence to the case, such as an act or statement by the accused demonstrating consciousness of guilt — but only if the evidence meets the criteria set forth in United States v. Reynolds, 29 M.J. 105, 109 (C.M.A.1989). The Reynolds criteria must be applied with care to ensure that the evidence is not used to convict the accused by showing “a propensity to commit the charged or other crimes.” Steven A. Saltzburg et al., 1 Military Rules of Evidence Manual § 404.02[10][c], at 4-91 (6th ed.2006).
The issue before us primarily involves the second prong of the Reynolds test — the requirement that the prosecution demonstrate that the evidence of uncharged misconduct makes a fact of consequence more or less probable. United States v. Harrow, 65 M.J. 190, 202 (C.A.A.F.2007). In the present case, the prosecuting officer testified as to her belief that Appellant was angry at both her and the legal office. She testified that he swerved a car close to her, and she further testified that she did not believe he was attempting to hit her. She speculated that he carried out this act “to intimidate [her] or to make some sort of showing of power or intimidation.” The Government elicited no specific information as to the actual or potential impact on the ability of the prosecution to introduce evidence, exercise discretion, or otherwise take action with respect to a fact of consequence in the case.
An act of uncharged misconduct motivated by the anger of an accused towards a prosecuting official does not prove that the accused committed the charged offenses in a pending trial. Given the stress of a prosecution in which reputation, career, family relationships, and extended confinement are at stake, it would not be unusual for an accused person to harbor negative feelings towards those viewed as responsible for his or her predicament, including feelings of anger. A person who believes he or she is innocent and wrongfully prosecuted may well harbor deep feelings of anger and resentment. Likewise, a person may recognize his or her responsibility for the conduct at issue but may nonetheless feel great anger over what he or she views as overcharging or a selective prosecution.
To prove that the act of anger makes a fact of consequence — consciousness of guilt— more or less probable under Reynolds, the Government must demonstrate a connection between the act of anger and the potential impact of the act on matters connected to the determination of guilt, such as the availability of evidence or exercise of prosecutorial discretion. In the present case, the Government did not demonstrate a relationship between Appellant’s act of swerving the vehicle and the availability of evidence, the exercise of prosecutorial discretion, or any other matter that would establish the probability of a fact of consequence in the case.
The responsibility for ensuring that such evidence meets the Reynolds criteria rests in the first instance with the military judge, not the court-martial panel. In the absence of a link between the act and the consequences for the prosecution of the case, the military judge erred by permitting the prosecution to elicit the testimony about the uncharged misconduct as evidence of Appellant’s consciousness of guilt.
The evidence also should have been excluded under the third prong of Reynolds, which balances the probative value of the evidence against the danger of unfair prejudice. See Harrow, 65 M.J. at 202. Here, the low probative value of the uncharged misconduct evidence was outweighed by the danger of unfair prejudice. The Government, in addressing the merits of the assault charges, specifically contended that the charged assaults resulted from Appellant’s violent and volatile personality. The evidence of Appellant’s uncharged misconduct in the automobile incident unnecessarily raised the risk that the members might infer that Appellant had a violent and volatile personality, and that the charged assaults were in conformity with these personality traits. Under these circumstances, the risk of prejudice far outweighed any probative value. To the extent that the military judge addressed these con *235 siderations in his instructions, that factor would bear’ on an assessment of whether the erroneous admission of the evidence constituted prejudicial error, not on the question of whether the military judge should have excluded the evidence from any consideration by the members.
For the foregoing reasons, I respectfully disagree with the majority’s conclusion that the military judge did not abuse his discretion in admitting the evidence of uncharged misconduct. I concur in the result, however, in view of the test for prejudice under Article 59(a), UCMJ, 10 U.S.C. 859(a) (2006). See United States v. Baumann, 54 M.J. 100, 105 (C.A.A.F.2000) (holding that the government must show that the erroneous admission of evidence under M.R.E. 404(b) did not materially prejudice the substantial rights of the appellant). The Government had substantial evidence in support of Appellant’s guilt, including Appellant’s own confessional statements and the testimony of the victim and the victim’s mother. Considering the severity of the injuries to his stepson, Appellant’s parental discipline defense was fairly weak. Accordingly, I concur in the majority’s decision to affirm the findings and sentence.